**ERIE BOULEVARD TRIANGLE CORPORATION, d/b/a Another World Books, d/b/a Adult Educational Books, Plaintiff,**

v.

**CITY OF SCHENECTADY, Defendant.**

No. 00–CV–1716.

United States District Court, N.D. New York.

June 29, 2001.

---

<br>

Lee Greenstein, J. Michael Murray, of counsel, Albany, NY, for plaintiff.

City of Schenectady Corporation Counsel, Schenectady, NY,· for defendant, Joseph R. Cardamone, of counsel.

## MEMORANDUM – DECISION AND ORDER

HURD, District Judge.

### I. *INTRODUCTION*

On November 30, 2000, plaintiff Erie Boulevard Triangle Corporation, d/b/a An-

1. The Ordinance defines an "Adult Bookstore" as: "An establishment having as a substantial or significant portion of its stock-in-trade books, magazines and other periodicals which are distinguished or characterized by their emphasis on matter depicting or relating to specified sexual activity or specific anatomical areas ... for observation by patrons therein." (Exhibit C at 1.)

2. The ordinance defines an "Adult Entertainment Establishment" as:
   Any business enterprise having as a substantial portion of its activity the presentation, characterized by emphasis on the description or depiction of specified· anatomical areas or specified sexual activities, of live shows, motion picture films or

other World Books and Adult Educational Books (hereinafter "Erie" or "plaintiff"), commenced the instant action against defendant City of Schenectady, New York (hereinafter the ·"City" or "defendant"), pursuant to 42 U.S.C. §§ 1983, 1985 and 1988. Following amendment of the zoning ordinance that is the subject matter of this action, plaintiff filed an amended complaint on May 10, 2001, asserting causes of action under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Defendant answered the amended complaint on May 23, 2001, and asserted seven affirmative defenses. Plaintiff now moves for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65. Defendant opposes. Oral argument was heard on June 8, 2001, in Utica, New York. Decision was reserved.

### II. *FACTS*

This action arises from the amendment of a zoning ordinance restricting the location of "adult bookstores"[1] and "adult entertainment establishments"[2] within the City of Schenectady, New York. Plaintiff seeks to enjoin the City's enforcement of the amended ordinance against it. Follow-

sound recordings presented by coin- or slug-operated, or electronically or mechanically controlled, still or motion-picture machines, projectors or other image-producing devices; any business enterprise serving food and beer, wine or liquor whose entertainers or waiters or waitresses appear in a state that displays any specified anatomical areas; or any business enterprise that offers services requiring the client or customer to display any specified anatomical areas, except medical and health service establishments. (Exhibit C at 1–2.) It is undisputed that plaintiff's establishments are adult bookstores, and not adult entertainment establishments, as defined by the Adult Ordinance.

ing are the undisputed facts in this case, and where disputed, the facts as alleged by each party.

Plaintiff is a corporation which owns and operates two adult bookstores located within the City of Schenectady which sell non-obscene adult books and videos. These establishments have operated in their current locations since 1973, and it is undisputed that they have done so without any identifiable impact on the surrounding areas related to the operation of either of plaintiff's adult bookstores.

In 1984, the City promulgated adult use zoning regulations (the "Adult Ordinance" or the "Ordinance"), which restricted future adult businesses to the City's Light Industrial G and Heavy Industrial H zoning districts. The Adult Ordinance enforced additional location restrictions within each zoning district, and required a special use permit for operation of adult use businesses. Existing adult uses were grandfathered under the ordinance, and permitted to continue in their existing locations as nonconforming prior uses under the City's zoning ordinance.

The factual basis for the adoption of the Adult Ordinance was a finding by the City that "studies have been conducted by many cities which document the adverse secondary effects associated with the establishment and operation of adult bookstores and adult entertainment establishments within a community." (Strichman Aff., Exh. A.) The City's express intent in adopting the Adult Ordinance was to "[a]meliorate, mitigate, reduce, or prevent the widespread and unregulated imposition of the adverse secondary impacts of adult bookstores and adult entertainment estab-

lishments upon the residents, businesses, economic viability, property values, quality of life and general health, safety and welfare of the community." (*Id.*)

Though the Adult Ordinance as originally adopted permitted pre-existing adult uses outside of zones G and/or H to remain at their current locations, subsequent amendments in 1999 (hereinafter "the 1999 Amendment") prohibited operation of all adult use businesses outside of zones G and/or H, and required such businesses to relocate to within zones G or H following an "amortization period" of one year. Business owners who violated the amended ordinance faced the threat of fines and imprisonment.

As a factual basis for the 1999 Amendment, the City commissioned a report to be prepared by Robert M. Penna, Ph.D. Dr. Penna's report addressed the adverse secondary effects sometimes associated with adult use businesses as they relate to a variety of towns, cities, and other municipalities in New York State and nationwide.[3] In addition, the City received public comment at a hearing on the proposed amendment, and also relied on the opinion and experience of the mayor of the City of Schenectady.

Because both of the plaintiff's establishments are located outside of zones G and H, plaintiff purchased a building within the acceptable zoning districts following the enactment of 1999 Amendment. When knowledge of plaintiff's intent to relocate became public, the City sought to acquire plaintiff's new property through the County of Schenectady's power of eminent do-

---

**3.** The report submitted does not specifically study Schenectady, New York. Additionally, although the report alludes to research conducted in other communities, the only locations mentioned by name in the report in

question are New York City, Indianapolis, Los Angeles, Austin, Phoenix, Whittier, Islip, Atlanta, Garden Grove, Tucson, Seattle, Oklahoma City, Houston, Beaumont, Minneapolis, Amarillo, Dryden, and Cleveland.

main.[4] This eminent domain action is presently the subject of litigation in state court.

Following the commencement of the instant action and a related case by another Schenectady adult business owner, the Adult Ordinance was again amended in 2000 (the "2000 Amendment"). The 2000 Amendment was adopted specifically to address an objection to the 1999 Amendment raised in the initial complaint in this action. This objection was that the 1999 Amendment failed to provide a sufficient number of receptor sites for adult uses because it defined "park" to include bicycle and hiking trails within zones G and H; therefore, the vast majority of sites within zones G and H were not available to adult uses because of their proximity to such trails. The 2000 Amendment redefined "park" to exclude bicycle and hiking trails from the list of protected uses which must be separated from adult businesses.

Plaintiff alleges that the City unconstitutionally enacted the 2000 Amendment without showing proper justification and/or reliance on any study, report, or fact-finding. The City denies this allegation and asserts that it was able to amend the ordinance based on the same study it relied on as the justification for the 1999 Amendment. Pursuant to an extension granted by the City's Board of Zoning appeals, plaintiff was permitted to continue operating its businesses at the current locations until June 13, 2001. To date, plaintiff's adult businesses remain in operation at the disputed locations.

4. The City downplays the significance of its role in the eminent domain action; however, it is undisputed that the property was condemned by the County for use by the City for a police station.

5. It is noted that there is some dispute within the Second Circuit as to whether a movant must satisfy the more rigorous "likelihood of success on the merits" standard when seeking

## III. STANDARD OF REVIEW

### A. Preliminary Injunction

■ In order to grant a preliminary injunction maintaining the status quo under a zoning ordinance, a court must find that (1) the plaintiff is at risk of imminent irreparable harm; and (2) the plaintiff has demonstrated either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir.2000).[5] When the party seeks a preliminary injunction to protect a constitutional right, however, courts generally do not require a showing of irreparable harm. *See, e.g., Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (when deprivation of rights derives from allegations of a First Amendment violation, irreparable harm presumptively exists); *Huminski v. Rutland City Police Dept.*, 221 F.3d 357, 360–61 (2d Cir.2000).

### B. First Amendment

■ Time, place, and manner regulations of activities protected by the First Amendment are able to survive scrutiny under the United States Constitution only if they: (1) are "content neutral," in that they do not attempt to regulate speech because of its subject matter, message, or ideas, but rather in an effort to control

to enjoin governmental action, regardless of whether or not the injunction seeks to maintain the status quo. *See Connecticut Hospital v. City of New London*, 129 F.Supp.2d 123, 127 (D.Conn.2001). It is not necessary to resolve this issue on the instant motion because plaintiff has demonstrated a likelihood of success on the merits.

adverse "secondary effects", such as crime, deterioration of neighborhoods, and decreases in property values; (2) are designed to advance a substantial government interest; and (3) leave open adequate alternative means of communication. *See United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *754 Orange Ave. Inc. v. City of West Haven*, 761 F.2d 105, 111–12 (2d Cir.1985). Regulations promulgated in order to restrict speech based on its content presumptively violate the First Amendment. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

## IV. *DISCUSSION*

Plaintiff contends that a preliminary injunction should issue because it has shown a likelihood of success as to whether the Adult Ordinance, as amended, impermissibly infringes upon its First Amendment rights, thereby causing irreparable harm. Moreover, plaintiff argues that the limited record in this case raises sufficiently serious and difficult questions which "call for more deliberate investigation." *Bukaka, Inc. v. County of Benton*, 852 F.Supp. 807, 811 (D.Minn.1993).

■ It is a well-recognized principle of law that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Additionally, the questions raised in this case, which consider the extent to which the government may legally infringe upon individual rights, are of a serious and important nature, especially when considered in light of the compelling "public interest in uphold[ing][the] First Amendment rights guaranteed by the Constitution." *Playboy Enterprises, Inc. v. Meese*, 639 F.Supp. 581, 587 (D.D.C.1986). Because plaintiff has shown a likelihood that the Adult Ordinance violates its First Amendment rights, and also because plaintiff has shown a serious and immediate threat of irreparable harm if enforcement of the Adult Ordinance is not enjoined,[6] plaintiff is entitled to a preliminary injunction preventing the City's enforcement of the Adult Ordinance against it. *See, e.g., Tunick v. Safir*, 228 F.3d 135, 137 (2d Cir. 2000); *Huminski*, 221 F.3d at 360–61.

### A. *First Amendment Violation*

■■ In order to survive Constitutional scrutiny, a zoning ordinance restricting the location of adult oriented businesses must be content neutral. *See, e.g., Hickerson v. City of New York*, 146 F.3d 99, 104 (2d Cir.1998); *Stringfellow's of New York, Ltd. v. City of New York*, 91 N.Y.2d 382, 397, 671 N.Y.S.2d 406, 694 N.E.2d 407 (1998). In other words, the zoning ordinance must be promulgated in order to control "the [adverse] secondary effects such as crime, deterioration of retail trade, and decrease in property values," rather than "out of mere distaste" for the message communicated by the adult oriented business. *Lakeland Lounge of Jackson, Inc. v. City of Jackson*, 973 F.2d 1255, 1257 (5th Cir.1992).

Plaintiff argues that the record is utterly devoid of any factual basis to justify either the 1999 Amendment or the 2000 Amendment, and that therefore it simply cannot be said that the Adult Ordinance was

---

**6.** If the injunction were not issued in this case, plaintiff would be faced with the choice of either relocating its business to an acceptable location or to cease operations entirely. Such a result would essentially decide the instant litigation, as once the plaintiff's businesses have either moved or terminated, there is little incentive to continue to challenge the elimination of the grandfathering provisions from the Adult Ordinance.

amended to control the "secondary effects" of adult businesses. Because there is no such correlation, plaintiff asserts that there is a substantial likelihood that the Adult Ordinance cannot survive scrutiny as a reasonable time, place, and manner restriction under *O'Brien.* Plaintiff is correct.

While it is true that "the [Supreme] Court has not required that a municipality conduct new studies or produce evidence independent of that generated by other cities or towns, so long as whatever evidence the municipality relied upon is reasonably believed to be relevant to the problem sought to be addressed", *Renton,* 475 U.S. at 49–50, 106 S.Ct. 925, there must be some reasonable nexus between evidence relied upon by the City and the problem allegedly addressed by the amended Ordinance. *See, e.g., N.W. Enterprises, Inc. v. City of Houston,* 27 F.Supp.2d 754, 778 (S.D.Tex.1998) ("[I]n order for an ordinance based on studies of other cities to be upheld, the city must demonstrate that when adopting the regulations the city had a reasonable basis for believing that these provisions would address [the adverse] secondary effects actually and currently attributable to sexually oriented businesses in the city."); *Alameda Books, Inc. v. City of Los Angeles,* 222 F.3d 719 (9th Cir.2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 1223, 149 L.Ed.2d 134 (2001).

The City has submitted no evidence whatsoever that either the 1999 Amendment or the 2000 Amendment was designed to address secondary effects of adult businesses within the City which were not adequately addressed by the initial version of the Adult Ordinance, or that plaintiff's businesses are responsible for any adverse secondary effects in their current, grandfathered locations. While the City claims that the disputed amendments were intended to address only the secondary effects associated with adult businesses, and are therefore content neutral, the City has wholly failed to provide any rational explanation why the elimination of the grandfathering provisions under the original version of the Adult Ordinance was necessary to accomplish this objective.[7]

■ Notwithstanding the absence of any evidence of actual secondary effects from the grandfathering of adult businesses under the Adult Ordinance, the City asserts that it appropriately relied on the outside study which served as the basis for the 1999 Amendment when amending its Adult Ordinance. Regardless of the purported reliance on the above-referenced study, it is clear that the City cannot show that it "had before it, and considered, evidence that [adverse] secondary effects still exist and that the city had a *reasonable basis for believing that the new restrictions it enacted would specifically address these effects.*" *N.W. Enterprises, Inc.,* 27 F.Supp.2d at 776 (emphasis added). In light of the fact that the City's actual experience under the Adult Ordinance demonstrates an absence of evidence of secondary effects, it simply cannot be said that it was reasonable to conclude that a study of other communities was relevant to the issue of whether the grandfathered adult businesses were creating adverse secondary effects within the City. Accordingly, it is found that there is a substantial likelihood that the City will not be able to demonstrate that the eliminating of the grandfathering provision from the Adult Ordinance was designed to

---

7. It is also noted that plaintiff's attempt to comply with the amended Adult Ordinance and relocate its businesses to an acceptable location was thwarted by the County's exercise of its power of eminent domain.

further the City's interest in ameliorating the secondary effects of adult businesses within Schenectady. *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673.[8]

## B. *Irreparable Harm*

Regardless of the fact that irreparable harm could be presumed on the instant motion, *Huminski*, 221 F.3d at 360 (where complaint alleged deprivation of a First Amendment right, "irreparable harm would have been presumed on a motion for a preliminary injunction"), it is clear that plaintiff has made a showing of a substantial and immediate risk of irreparable harm if the City's enforcement of the Adult Ordinance is not enjoined.

As the Supreme Court held in *Elrod*, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. at 373, 96 S.Ct. 2673. It is undisputed that if the City is permitted to enforce the Adult Ordinance against plaintiff, plaintiff will be compelled to cease operation of its businesses at locations which they have occupied for 28 years. Because there is a substantial likelihood that this harm is directly related to the protected content of plaintiff's businesses, an injunction is appropriate to preserve the status quo pending an expedited trial of this matter.

The City argues that plaintiff would merely suffer monetary damages if the preliminary injunction sought by plaintiff is not granted, and that plaintiff's harm could therefore be alleviated through monetary payment. Although the City correctly points out that "purely monetary [harm] [is] not normally considered irreparable for purposes of granting preliminary injunctions", the City incorrectly characterizes the nature of the harm to plaintiff if an injunction is not issued. Regardless of whether or not plaintiff could be compensated monetarily for the economic harm to its businesses, it is axiomatic that "any loss of First Amendment freedoms, even briefly, ... constitute[s] irreparable [harm]." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir.1984). Because the plaintiff has raised substantial questions as to whether enforcement of the 2000 Amendment will infringe upon its First Amendment freedoms, the prospect of mere monetary relief is an inappropriate remedy in the instant case.

The City further argues that the plaintiff will not suffer irreparable harm if the Adult Ordinance is enforced because plaintiff has the option to either move its establishment or to modify its business so as not to be considered an "adult use" business. Additionally, the defendant argues that the City would face considerable harm if forced to maintain the status quo and allow plaintiff to remain at its present locations as it has for over 28 years. This argument must fail. "Alternatives of either curtailing lawful speech or relocating each constitute[ ][a] significant burden on lawful speech" and do not afford the plain-

---

**8.** In addition, there appears to be some dispute as to whether the Adult Ordinance leaves open an adequate number of alternative receptor sites. Although the exact number of alternative sites available is in dispute, at the most, fourteen sites are available for the five existing adult use businesses to relocate to. "There is no bright line rule that an ordinance is constitutional when the number of locations available for adult businesses equals or exceeds the number of existing adult businesses," *Young v. City of Simi Valley*, 216 F.3d 807, 822 (9th Cir.2000). Because there is considerable dispute as to whether the 2000 Amendment leaves an "adequate" number of receptor sites for adult uses, the question of adequate alternative receptor sites alone is sufficiently serious and important as to warrant an injunction pending trial on the merits.

tiff with any meaningful choice. *North Street Book Shoppe, Inc. v. Village of Endicott*, 582 F.Supp. 1428, 1432 (N.D.N.Y. 1984). As a result, the burden which would be borne by the plaintiff in complying with the Adult Ordinance greatly outweighs that which would face the defendant in merely maintaining the status quo. This is especially true in light of the fact that the parties have agreed to an expedited trial and that maintaining the status quo pending trial represents, at most, a minor inconvenience to the City. Therefore, plaintiff's motion for a preliminary injunction to maintain the status quo must be granted.

## V. *CONCLUSION*

Plaintiff has demonstrated the existence of sufficiently serious and important questions going to the merits, as well as the likelihood of irreparable harm if a preliminary injunction is not issued. Because it is in the interest of justice to maintain the status quo pending a final resolution of this matter on an expedited basis, a preliminary injunction shall issue.

Therefore, it is hereby

ORDERED that

1. Plaintiff Erie Boulevard Triangle Corporation's motion for a preliminary injunction is GRANTED; and

2. The defendant City of Schenectady and its employees and agents are enjoined from enforcing the Adult Ordinance, as amended, against the plaintiff, Erie Boulevard Triangle Corporation, or any of its businesses, subsidiaries, owners, employees or agents.

IT IS SO ORDERED.