# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3214

_____

| | | |
|---|---|---|
| BZAPS, Inc.,<br>Doing Business<br>as Buster's Bar, | * * * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| City of Mankato, | * | of Minnesota. |
| | * | |
| Appellee. | * | |

_____

Submitted: May 17, 2001

Filed: October 12, 2001

_____

Before MORRIS SHEPPARD ARNOLD and BYE, Circuit Judges, and GAITAN,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

BZAPS, Inc., contracted with a group known as "Fatal Attraction," a male dance revue that performs in various states of nudity, to perform for one night at Buster's Bar, owned by BZAPS in Mankato, Minnesota. When a BZAPS

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

representative contacted the city planning director regarding the permissibility of this performance, the planning director stated that such a performance would violate Mankato City Ordinance § 10.83(4)(A), which allows adult uses only in zoning areas different from the one in which Buster's Bar is located.

BZAPS sued the city, claiming that the first amendment forbids the application of § 10.83 to a one-night performance. After the district court[2] denied a request by BZAPS for a preliminary injunction, the city enacted Mankato City Ordinance § 4.09(1), banning adult uses in any establishment with a liquor license. BZAPS then amended its complaint to challenge the constitutionality of § 4.09(1) on its face and as applied to a one-night performance. The district court granted summary judgment to the city. We affirm.

I.

Under § 10.83(4)(A), the city prescribes the permissible locations of "adult use, principal," establishments. The B-1 "community business district," where Buster's Bar is located, is not included in the list of permissible locations. *See id.* The ordinance also requires, *see* § 10.83(4)(B), such establishments to be at least 350 feet from residential districts, day care centers, schools, libraries, parks, churches, and other "adult use, principal," establishments. The ordinance, *see* § 10.83(1)(A), defines an "adult use" as one "in which there is an emphasis on the presentation, display, depiction or description of 'specified sexual activities' or 'specified anatomical areas.' " "Specified sexual activities" and "specified anatomical areas" are enumerated in some detail. *See* § 10.83(1)(A)(1), § 10.83(1)(A)(2).

The ordinance, *see* § 10.83(1)(C), defines an "adult use, principal," establishment as one "having more than 10% of its stock in trade or floor area

_____

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

allocated to, or more than twenty percent (20%) of its gross receipts derived from, any adult use." The city contends that this standard applies on a per-day basis, and that a one-night adult performance using more than 10% of Buster's floor space would cause it to become an "adult use, principal," establishment for that night, thus violating § 10.83(4)(A). BZAPS contends that this interpretation of § 10.83 violates the first amendment.

The Supreme Court has frequently recognized that nude dancing is protected by the first amendment, *see, e.g.*, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991) (plurality opinion), *see also id.* at 581 (opinion of Souter, J.) and *id.* at 593 (opinion of White, J.), but the Court has nevertheless allowed local governments to use their zoning powers to limit the location of adult establishments. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54-55 (1986), and *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 63 (1976). In upholding the zoning ordinance in *Renton*, the Court concluded that an ordinance limiting the location of adult establishments is proper so long as it is constructed without reference to content, *see Renton*, 475 U.S. at 48, and is designed to promote a substantial governmental interest and allows reasonable alternative avenues for communication, *see id.* at 50. *See also ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994), *cert. denied*, 513 U.S. 1017 (1994).

On its face, § 10.83 differs in no relevant respect from the ordinance upheld in *Renton*, 475 U.S. at 44. We see no evidence that the enactment of the ordinance was motivated by a desire to suppress the content of nude dancing, and the city indicates that its concern was with the secondary effects of the dancing. *See* § 10.83(2). The ordinance, *see* § 10.83(4), makes no attempt, furthermore, to change or ban a specific message but merely regulates the location where the message may be expressed. *See Renton*, 475 U.S. at 48. The ordinance also allows for reasonable alternative avenues for communication, *see id.* at 50, for it appears that there are numerous locations within Mankato that remain available for adult uses. Indeed, the Mankato ordinance

appears less restrictive than the ordinance upheld in *Renton*, since § 10.83 prevents adult uses within 350 feet of certain other uses, in contrast to the 1,000-foot barrier imposed in *Renton*, 475 U.S. at 44.

BZAPS contends, however, that the city has failed to show that § 10.83 is reasonably related to the promotion of a substantial governmental interest. The city maintains that it enacted the ordinance because of its concern about the secondary effects of nude dancing establishments, such as crime and decreasing property values in the surrounding areas. Although the city admits that it has no direct evidence of these effects occurring within Mankato, when enacting the ordinance the city relied upon studies previously conducted by the cities of Indianapolis, Indiana, and St. Paul and Rochester, Minnesota. These studies show a connection between adult entertainment establishments and adverse secondary effects of the type that concern the city.

It is now beyond question that a city may regulate the location of adult entertainment when motivated by the secondary effects of that entertainment. *See Renton*, 475 U.S. at 50-51. A city need not conduct its own study regarding these effects, moreover, but may rely on evidence "already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses," *id.* at 51-52; *see also ILQ*, 25 F.3d at 1417-18. The city's reliance on the studies of other cities was a sufficient basis to enact § 10.83, because the studies relied upon are reasonably related to the city's concerns about adult entertainment.

## II.

BZAPS maintains that even if the evidence relied upon by the city is sufficient to justify § 10.83 on its face, it is not sufficient to justify the application of § 10.83 specifically to BZAPS. In particular, BZAPS maintains that the studies do not indicate a causal relationship between a one-night performance of the type it proposes

to hold at Buster's Bar and the secondary effects motivating the enactment of § 10.83. BZAPS also contends that identical one-night adult shows have previously been held in Mankato without such secondary effects.

Once a city has decided to regulate adult entertainment to prevent its secondary effects, however, the city is not required to prove that a particular adult use creates secondary effects before regulating that use, so long as the city reasonably believes that the use is related to other uses that have been shown to cause secondary effects. *See Holmberg v. City of Ramsey*, 12 F.3d 140, 143 (8th Cir. 1993), *cert. denied*, 513 U.S. 810 (1994). BZAPS's proposed use differs little from many other adult performances. The fact that this performance is to last for only one night as opposed to what occurs in a so-called "strip club" that features an identical performance on a nightly basis does not preclude the city from reasonably believing that the uses are related.

We believe that *Alameda Books, Inc. v. City of Los Angeles*, 222 F.3d 719 (9th Cir. 2000), *cert. granted*, 121 S. Ct. 1223 (2001), and *Tollis, Inc. v. San Bernardino County*, 827 F.2d 1329 (9th Cir. 1987), cases on which BZAPS relies heavily, are not helpful to it. In *Alameda Books*, 222 F.3d at 721, the city of Los Angeles attempted to regulate a combination adult bookstore/arcade under an ordinance that would permit either an adult bookstore or an adult arcade, but not both, at one location. The Ninth Circuit invalidated the ordinance, finding that the city had no evidence from which it could reasonably conclude that a combination bookstore/arcade would precipitate greater secondary effects than an individual bookstore or arcade would. *See id.* at 728. In the present case, however, the city relied upon evidence directly relating to the adverse effects of nude dancing, and could thus reasonably conclude that a one-night performance of nude dancing might have some similar effects.

In *Tollis*, 827 F.2d at 1333, the Ninth Circuit invalidated a zoning ordinance defining an adult theater as any theater showing a single adult film. The court

determined, *see id.*, that the county had no evidence to indicate that a single showing of an adult film would have any secondary effects. The court opined further, *id.*, that it did not "see how the County could make such a showing, since it is difficult to imagine that only a single showing ever, or only one in a year, would have any meaningful secondary effects." The court therefore held, *see id.*, that the ordinance failed to meet the requirement of *Renton*, 475 U.S. at 52, that such an ordinance must be " 'narrowly tailored' to affect only that category of theaters shown to produce the unwanted secondary effects."

We think that the Ninth Circuit has overstated the requirements of *Renton*. We believe, instead, that once a city has validly forbidden adult uses within a particular area, it may enforce that ordinance against all adult uses in that area without showing that a particular use will produce secondary effects. *Renton*, 475 U.S. at 52-53, does not require cities to discriminate among adult uses; it merely requires that laws of this type not sweep so broadly as to regulate establishments that never present adult entertainment, such as the ordinance banning all live entertainment struck down in *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981). The Mankato ordinance is narrowly tailored to apply solely to a "category of [establishments] shown to produce the unwanted secondary effects," *Renton*, 475 U.S. at 52, namely, establishments that present adult entertainment. If we were to accept BZAPS's argument, a city would have the burden of showing precisely how many adult performances were capable of producing an unacceptable level of antisocial activity before the city could regulate those performances. We are satisfied that neither the first amendment nor Supreme Court precedent requires a city to do the impossible.

## III.

BZAPS also challenges the constitutionality of Mankato City Ordinance § 4.09(1), which prohibits the holder of a liquor license from allowing an adult use, as defined by § 10.83(1)(A), within the license holder's establishment. Prior to the Supreme Court's ruling in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996),

§ 4.09(1) would clearly have been upheld under the rule of *California v. LaRue*, 409 U.S. 109 (1972). In *LaRue*, 409 U.S. at 118-19, the Supreme Court held that a California law forbidding certain adult activities in bars was constitutional because of the state's power to govern liquor sales under the twenty-first amendment and also because the state's concern with the mix of alcohol and adult activity was a rational use of the state's police power. As the district court in BZAPS's case correctly pointed out, "there are no material differences between California's regulatory system and Mankato's liquor ordinance."

BZAPS contends, however, that *44 Liquormart* undoes the precedential effect of *LaRue*. We disagree. While the Court in *44 Liquormart* rejected *LaRue*'s reliance on the twenty-first amendment as a basis for its decision, *see 44 Liquormart*, 517 U.S. at 516, it specifically declined to disturb *LaRue*'s holding. *See id.* The Court declared that the outcome in *LaRue* would have been the same without reliance on the twenty-first amendment, and that "[e]ntirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations," *id.* at 515.

Because the Supreme Court has refused to reject the holding of *LaRue*, the case remains precedent that we are obliged to apply to similar cases. *See Groninger v. Davison*, 364 F.2d 638, 642 (8th Cir. 1966). As noted earlier, *LaRue* and the present case are virtually indistinguishable. The city's concern about the combination of alcohol and adult entertainment is not irrational, and the city is thus entitled under its police power to prohibit the sale of alcohol in a location that features adult entertainment. We therefore hold that § 4.09 is constitutional both on its face and as applied to BZAPS.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion about the constitutionality of Mankato City Ordinance § 4.09. I therefore concur in the result, which denies the injunctive relief sought by BZAPS. But I disagree with the majority's analysis of Mankato City Ordinance § 10.83. BZAPS initiated its challenge to § 10.83 eleven months before Mankato passed § 4.09. Because I believe we may liberally construe BZAPS's prayer for relief as asking for damages for the constitutional violation that occurred during that time period, I dissent from parts I and II of the majority opinion.

Unlike § 4.09, which addresses Mankato's concern about the harmful secondary effects of combining alcohol and adult entertainment, § 10.83 was enacted to address the city's concern about the harmful secondary effects of adult businesses, period. In City of Renton v. Playtime Theatres, Inc., the Supreme Court upheld a similar municipal ordinance because it was "'narrowly tailored' to affect only that category of theatres shown to produce the unwanted secondary effects." 475 U.S. 41, 52 (1986). Mankato City Ordinance § 10.83 might likewise be "narrowly tailored" if it applied only to a category of businesses which, on an ongoing basis, have "more than 10% of [their] stock in trade or floor area allocated to, or more than twenty percent (20%) of its gross receipts derived from, any adult use." Mankato City Ordinance § 10.83(1)(C).

Mankato contends, however, that its ordinance applies on a per-day basis. By applying the ordinance in that manner, Mankato targets the content of a single adult performance — rather than a category of adult businesses shown to produce harmful secondary effects — without presenting evidence that a single adult performance has any harmful secondary effects on the community.

In Tollis Inc. v. San Bernardino County, the Ninth Circuit struck down an ordinance that San Bernardino County construed in such a way that a single showing

of adult entertainment rendered a business "adult oriented" as defined by the ordinance. 827 F.2d 1329, 1333 (9th Cir. 1987). The court held that the County failed to show the ordinance was "sufficiently 'narrowly tailored' to affect only that category of businesses shown to produce the harmful secondary effects" because the County had "presented no evidence that a single showing of an adult movie would have any harmful secondary effects on the community." Id.

I fully agree with Tollis, and believe it to be entirely consistent with the Supreme Court's decision in Renton. Mankato presented no evidence that a single showing of an adult performance puts a business in that category of businesses shown to produce harmful secondary effects. As a result, the city failed to show that the ordinance, as applied on a per-day basis, was narrowly tailored under Renton.

I read the majority as rejecting Tollis because, if we require evidence that a single performance causes adverse secondary effects, then we will impose the impossible burden on cities of showing the precise number of performances that will produce harmful secondary effects before it can regulate *any* adult performances. If the majority is rejecting Tollis on the ground that its analysis would inevitably require courts to determine how many adult performances are too many, I respectfully disagree.

Under Renton, Mankato absolutely has the burden of narrowly tailoring its ordinance. An ordinance that allows the city to regulate the content of a single performance, without presenting evidence that a single performance causes adverse secondary effects, is not narrowly tailored. A per-day application of § 10.83 necessarily raises the specter of impermissible content-based regulation of the expressive content of the single performance itself, rather than the permissible regulation of a category of business shown to produce harmful secondary effects.

Clearly, ordinances can be drafted in such a way that courts will not be required to determine when the number of adult performances — presented by an otherwise "non-adult oriented" business — crosses the constitutional line. For example, § 10.83 could be saved simply by applying its "10% floor space/20% gross receipts" standard on something other than a per-day basis, perhaps quarterly or annually. Requiring Mankato to narrowly tailor this ordinance clearly does not impose an impossible burden, when the ordinance itself suggests an entirely reasonable, and possible, constitutional interpretation.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.