ILQ INVESTMENTS, INC., a Minnesota corporation; Excalibur Group, Inc., a Minnesota corporation, Plaintiffs–Appellees,

v.

CITY OF ROCHESTER, a municipal corporation, Defendant–Appellant.

No. 93–1925.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1993.

Decided June 15, 1994.

James J. Thomson, Minneapolis, MN, argued, for appellant.

Randall D.B. Tigue, Minneapolis, MN, argued, for appellee.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

Rochester is a city of 75,000 people in southern Minnesota. In April 1988, Rochester enacted Ordinance No. 2590, a zoning ordinance that defines and restricts the location of "adult establishment uses." In this case, the district court has preliminarily enjoined enforcement of Ordinance No. 2590 against a newly-opened adult bookstore in

downtown Rochester. *See ILQ Invs., Inc. v. City of Rochester*, 816 F.Supp. 516 (D.Minn. 1993). Concluding that Ordinance No. 2590 will almost certainly survive constitutional challenge under *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), we reverse.

## I.

In the summer of 1992, appellees ILQ Investments, Inc., and Excalibur Group, Inc. (collectively "ILQ"), opened Downtown Book and Video on the main floor of a commercial building in premises previously occupied by a retail china shop. Downtown Book and Video segregates forty per cent of its floor space into an adults-only area selling sexually explicit books, magazines, and novelty items that account for fifty per cent of the store's total sales. The store has no facilities for on-premises viewing of these sexually explicit materials.

On August 7, 1992, the Zoning Administrator issued two Notices of Violation. The first advised ILQ that it violated § 61.111 by changing the use of the property without a zoning certificate.[1] The second Notice frames the issues for this appeal. It informed ILQ that Downtown Book and Video was violating Ordinance No. 2590 because the store is an "adult bookstore"[2] and an "adult establishment"[3] that is located within 750 feet of a "youth facility,"[4] the Rochester Public Library. Both Notices ordered the violations discontinued but gave ILQ ten

days to appeal the Zoning Administrator's decisions.

ILQ appealed to the Zoning Board of Appeals and then to the Rochester Common Council. Both held public hearings, made detailed findings of fact and conclusions of law, and upheld the Zoning Administrator's decisions. Foregoing judicial review in state court, ILQ commenced this 42 U.S.C. § 1983 action, seeking declaratory and injunctive relief on the ground that Ordinance No. 2590 violates ILQ's First Amendment and due process rights.

The district court granted a preliminary injunction, enjoining the City "from taking any action, civil or criminal, to enforce the provisions of Ordinance No. 2950 against [ILQ]." The court concluded that ILQ is likely to succeed on the merits of its constitutional challenge because the definition of "adult bookstore" is impermissibly vague, and because Rochester was unreasonable in relying on other cities' studies to justify both the breadth of Ordinance No. 2590 and its application to Downtown Book and Video. ILQ is irreparably harmed by this chilling of its First Amendment rights, the court reasoned, and the balance of harms and public interest support preliminary injunctive relief. *See Dataphase Systems v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc).

█ Rochester appeals this preliminary injunction, challenging only one prong of the district court's preliminary injunction analysis—whether ILQ is likely to succeed on the

---

**1.** Rochester requires a zoning certificate "before ... an existing use is changed or modified so as to alter the character of its occupancy." Rochester Code of Ordinances § 61.111.

**2.** An "adult bookstore" is a "business engaging in the ... sale of items consisting of printed matter [etc.] ... if a substantial or significant portion of such items are distinguished or characterized by an emphasis on the depiction or description of 'specified sexual activities' or 'specified anatomical areas.'" Rochester Code of Ordinances § 60.4012. The ordinances include detailed definitions of the terms "specified sexual activities" and "specified anatomical areas." *See* Rochester Code of Ordinances §§ 60.4642, 60.4643.

**3.** An "adult establishment" includes an "adult bookstore" and is also generally defined as "any ... business which offers its patrons services or

entertainment characterized by an emphasis on matter depicting, exposing, describing, discussing or relating to specified sexual activities or specified anatomical areas." Rochester Code of Ordinances § 60.4015.

**4.** A "youth facility" is a "public playground, public swimming pool, public library, or licensed day care facility." Rochester Code of Ordinances § 60.4795. "All adult establishment uses shall be located not less than 750 feet from any residential district boundary, from any church, from any school, or from any youth facility. In addition, no adult establishment use may be located within 750 feet of another adult establishment use." Rochester Code of Ordinances § 65.720.

merits of its constitutional claims. We have jurisdiction to review the grant of a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1). We review for a clearly erroneous factual determination, an error of law, or an abuse of discretion. *See West Pub. Co. v. Mead Data Central, Inc.,* 799 F.2d 1219, 1222–23 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987).

## II.

■ ILQ does not allege that Ordinance No. 2590 effectively bans adult entertainment uses from Rochester. Therefore, this zoning ordinance is "properly analyzed as a form of time, place, and manner regulation." *City. of Renton,* 475 U.S. at 46, 106 S.Ct. at 928. Time, place, and manner regulations are acceptable if they are "content-neutral," and if they are "designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. at 928. Applying this test, we have recently upheld similar ordinances enacted by the cities of Little Rock, Arkansas, *see Ambassador Books & Video, Inc. v. City of Little Rock,* 20 F.3d 858 (8th Cir.1994); Ramsey, Minnesota, *see Holmberg v. City of Ramsey,* 12 F.3d 140 (8th Cir.1993); Minneapolis, Minnesota, *see Alexander v. City of Minneapolis,* 928 F.2d 278 (8th Cir.1991); and St. Louis, Missouri, *see Thames Ent., Inc. v. City of St. Louis,* 851 F.2d 199 (8th Cir.1988). *See also SDJ, Inc. v. City of Houston,* 837 F.2d 1268 (5th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989).

■ In applying the *City of Renton* test, the first task is to determine whether the ordinance is "content-neutral." This is a term of art. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). Thus, even if a time, place, and manner ordinance regulates only businesses selling sexually explicit materials, the ordinance is content-neutral if its purpose is to lessen undesirable secondary effects attributable to those businesses, such as increased crime, lower property values, or deteriorating residential neighborhoods. *See Holmberg,* 12 F.3d at 143; *Doe v. City of Minneapolis,* 898 F.2d 612, 617 (8th Cir. 1990).

■ ILQ argues that Ordinance No. 2590 is not content-neutral because Rochester has failed to prove that the City's adult businesses cause adverse secondary effects. That argument impermissibly confuses distinct aspects of the *City of Renton* test. Content neutrality focuses on the City's purposes in enacting the ordinance. *Ward,* 491 U.S. at 791, 109 S.Ct. at 2754. Here, it is clear that the Common Council targeted not the content of Downtown Book and Video's materials, but the anticipated impact of adult businesses on their surrounding communities. On this record, Ordinance No. 2590 is indisputably content-neutral.

■ To survive First Amendment scrutiny, a content-neutral regulation must be "designed to serve a substantial governmental interest." *City of Renton,* 475 U.S. at 47, 106 S.Ct. at 928. Regulations reasonably designed to curb unwanted secondary effects of sexually oriented businesses serve a substantial governmental interest. *See id.* at 50, 106 S.Ct. at 930; *Holmberg,* 12 F.3d at 143. In identifying and measuring such secondary effects, a city may rely upon studies or evidence generated by other cities "so long as [that] evidence ... is reasonably believed to be relevant to the problem that the city addresses." *City of Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931; *see also Ambassador Books & Video,* 20 F.3d at 862. The legislative history of Ordinance No. 2590 demonstrates that the City has satisfied this element of the *City of Renton* standard.

In February 1987, the Common Council became concerned about two adult bookstores located across from each other in downtown Rochester and directed the Planning Commission to study the effects of adult entertainment uses. On March 2, 1988, the Planning Department published the results of its study in a report entitled "Adult Entertainment: Land Use and Legal Perspectives." This report discussed the relevant legal issues and precedents and summarized

studies of the adverse secondary effects of adult entertainment businesses conducted by other cities, including Minneapolis and St. Paul. The study concluded:

a) A considerable number of communities throughout the nation have studied the impacts which adult entertainments have on the areas surrounding them.

b) These studies have concluded that adult entertainment uses have an adverse impact on the surrounding neighborhoods.

c) Residential neighborhoods in proximity to adult uses suffer adverse effects including increased crime rates, lowered property values, and increased transiency.

d) Values of both commercial and residential properties are diminished when located in proximity to adult entertainment businesses.

e) The adverse impact on commercial areas is increased by the presence of more than one adult entertainment use in close proximity to another adult entertainment use.

f) The impact which an adult entertainment use has on the surrounding area appears to lessen as the distance from the adult entertainment use increases.

g) Reasonable "time, place and manner" restrictions which address the "secondary" impacts of adult entertainment uses are constitutionally permissible.

After conducting a public hearing, the Planning Commission adopted detailed findings and conclusions, including:

6. The concerns which have prompted public hearings in this city are similar to the concerns which motivated the communities of Indianapolis, Indiana; St. Paul, Minnesota; Phoenix, Arizona; and Seattle, Washington to undertake their studies of adult entertainment uses; consequently, the results of those studies are relevant to the existing or foreseeable impacts which such uses can have on the areas surrounding them in this city.

7. The concentration of adult entertainment uses in commercial areas or the location of adult entertainment uses in close proximity to residential uses, churches, parks and schools will result in devaluation of property values and decreases in commercial business sales, thereby reducing tax revenues to the City and adversely impacting the economic well-being of the citizens of this City.

8. Location of adult entertainment uses in proximity to residential uses, churches, parks, schools, bars, and other adult entertainment uses very likely would lead to increased levels of criminal activities, including prostitution, rape, assaults, and other sex-related crimes in the vicinity of such adult entertainment uses.

At its April 18, 1988, meeting, the Common Council took up the Commission's recommendation that the City amend its zoning code to restrict the location of adult establishment uses. The Council reviewed the Planning Department study and heard testimony by the Planning Department, Planning Commission, and local residents. After finding that other cities' studies "are relevant to the existing or foreseeable impacts which such uses can have on the areas surrounding them in this city," the Council adopted Ordinance No. 2590.

 Despite this thorough legislative process, the district court concluded that the City was unreasonable in relying upon the other cities' studies because they did not specifically address businesses similar to Downtown Book and Video, that is, adult bookstores "that offer both sexually explicit and non-sexually explicit materials and allow only off-premises consumption of those materials." ILQ urges us to uphold this ruling, asserting that, for this reason, Ordinance No. 2590 is not "narrowly tailored to regulate only those adult uses shown to have caused adverse secondary effects."

The legislative history of Ordinance No. 2590 does not support the district court's conclusion. The studies the Common Council found relevant to Rochester's problems identified and measured adverse secondary effects linked to adult businesses generally— higher crime, neighborhood deterioration, lower property values, and an increase in transients—as well as adverse secondary ef-

fects *specifically attributable to adult bookstores*:

- The Indianapolis study included a national survey of real estate appraisers. Of the 507 responding appraisers, 80% opined that an adult bookstore would reduce the value of residential properties within one block of the site, and 72% opined that an adult bookstore would reduce the value of commercial properties within one block. "This negative impact dissipates markedly as the distance from the site increases."
- The St. Paul study included one neighborhood in which 20% of the City's adult entertainment· establishments, including the only adult bookstore, were located. The documented secondary effects included "discarded pornographic literature allegedly found in the streets, sidewalks, bushes and alleys near adult businesses. Such literature is sexually very explicit, even on the cover, and ... becomes available to minors even though its sale to minors is prohibited."
- The St. Paul study concluded that a concentration of adult businesses in one area causes the greatest neighborhood problems. "In many cities, adult bookstores and movie theatres are associated with the most serious land use problems. This pattern persists in Saint Paul as well."

ILQ argues that Rochester was constitutionally required to disregard these studies because none evaluated the secondary effects of a bookstore offering non-adult as well as adult materials and having no facilities for on-premises consumption. That is simply not the law. "[T]he requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799, 109 S.Ct. at 2758, quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985). Under *City of Renton*, Rochester need not prove that Downtown Book and Video would likely

have the exact same adverse effects on its surroundings as the adult businesses studied by Indianapolis, St. Paul, and Phoenix. So long as Ordinance No. 2590 affects only categories of businesses reasonably believed to produce at least some of the unwanted secondary effects, Rochester "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976) (plurality opinion).

Rochester relied upon studies that identified specific adverse secondary effects attributable to adult bookstores. The City reasonably believed that evidence was relevant to the problems addressed by Ordinance No. 2590. Even if Downtown Book and Video is a new type of adult business,[5] it may not avoid time, place, and manner regulation that has been justified by studies of the secondary effects of reasonably similar businesses. *See Holmberg*, 12 F.3d at 143–44.

ILQ does not argue that Ordinance No. 2590 unreasonably limits alternative avenues of communication, the third prong of the *City of Renton* test. Accordingly, on the preliminary injunction record before us, we conclude that this ordinance may validly be applied to Downtown Book and Video under *City of Renton.*

### III.

■ The district court also concluded that ILQ will likely prevail on the merits of two other constitutional claims: first, that Ordinance No. 2590 is impermissibly vague because it classifies a business as an adult bookstore if a "substantial or significant portion" of its merchandise is sexually explicit; and second, that Ordinance No. 2590 is impermissibly broad because the term "adult establishment" includes a business that offers *any* entertainment "characterized by an emphasis" on sexually explicit activity.

Rochester argues that ILQ lacks standing to· raise these claims because Downtown Book and Video is unquestionably an "adult

---

5. An affidavit by ILQ's president recites that "on-premises viewing booths, otherwise known as 'peep shows' .... are an absolute essential component" of the 70 adult bookstores in 25 States that he has personally visited.

bookstore" and an "adult establishment" within the meaning of Ordinance No. 2590. *See American Mini Theatres,* 427 U.S. at 58–59, 96 S.Ct. at 2446–47; *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). ILQ replies that the impact of this ordinance on Downtown Book and Video is nonetheless uncertain because Rochester zoning officials refuse to clarify what amount of sexually explicit material will violate this criminal statute.[6] *Compare Kolender v. Lawson,* 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

On this record, we find ILQ's argument unpersuasive. ILQ's First Amendment interest is relatively weak—"there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance." *American Mini Theatres,* 427 U.S. at 61, 96 S.Ct. at 2448. ILQ is not primarily concerned with its right of free expression, or it would have located Downtown Book and Video in an unrestricted part of the City. ILQ is also not primarily concerned with the risk of criminal prosecution, or it would have applied for a change-of-use certificate rather than confronting the City with an up-and-running adult bookstore in the downtown area. Given the City's properly substantiated interest in these zoning regulations, we see no reason why ILQ should not be subject to the same tensions and uncertainties that zoning regulations typically impose upon other legitimate enterprises.

Moreover, the portions of this detailed ordinance that ILQ attacks are not devoid of meaningful legislative standards. The limiting term, "characterized by an emphasis" on the sexually explicit, which ILQ characterizes as overly broad, has been widely construed since it was discussed and upheld in the Supreme Court's 1976 decision in *American Mini Theatres.* The limiting term, "substantial portion" of a bookstore's merchandise,

which ILQ characterizes as impermissibly vague, appears frequently in the United States Code. *See, e.g.,* 42 U.S.C. § 2000a(c) ("The operations of an establishment affect commerce if a substantial portion of the food which it serves … has moved in commerce"). In these circumstances, we conclude that ILQ's vagueness and overbreadth arguments are not likely to succeed. As the Supreme Court said in *American Mini Theatres,* 427 U.S. at 61, 96 S.Ct. at 2448.

> [T]he only vagueness in the ordinances relates to the amount of sexually explicit activity that may be portrayed before the material can be said to be "characterized by an emphasis" on such matter. For most films the question will be readily answerable; to the extent that an area of doubt exists, we see no reason why the ordinances are not "readily subject to a narrowing construction by the state courts."

ILQ intentionally declined to present its vagueness and overbreadth claims to the state courts, choosing instead to bring these claims, in the form of largely hypothetical enforcement issues, in federal court. We think the district court erred in concluding that these claims are likely to prevail.

### IV.

We conclude that the preliminary injunction should not have been granted. ILQ is unlikely to prevail on the merits of its First Amendment and due process claims and therefore has failed to prove that substantial First Amendment interests are being irreparably injured by Rochester's time, place, and manner regulation of Downtown Book and Video. The public interest is not served by premature federal court intervention in regulatory matters of strong local interest. Accordingly, the district court's order of February 22, 1993, is reversed.

HEANEY, Senior Circuit Judge, concurs in the result.

---

**6.** A violation of these Rochester zoning ordinances is a misdemeanor punishable by up to a $700 fine and 90 days in prison for each day of violation.