Z.J. GIFTS D–2, L.L.C., an Oklahoma limited partnership d/b/a Christal's, Plaintiff–Appellant,

v.

CITY OF AURORA, an incorporated home rule municipal corporation, Defendant–Appellee.

No. 03CA0425.

Colorado Court of Appeals, Div. IV.

May 20, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2003.

Schwartz & Goldberg, P.C., Arthur M. Schwartz, Michael W. Gross, Denver, Colorado, for Plaintiff–Appellant.

Charles H. Richardson, City Attorney, Robert Werking, Assistant City Attorney, Aurora, Colorado; Arrington & Associates, P.C., Barry K. Arrington, Golden, Colorado, for Defendant–Appellee.

Opinion by Judge GRAHAM.

Plaintiff, Z.J. Gifts D–2, L.L.C., doing business as Christal's, appeals the trial court's judgment permanently enjoining it from operating a sexually oriented business in its present location and without a sexually oriented business license. We affirm.

In November 1993, plaintiff began operating a retail video and gift store in the City of Aurora known as Christal's that sold and rented adult sexually oriented materials, among other items, for viewing off premises. Plaintiff provided no onsite viewing of material or adult entertainment.

In December 1993, the City enacted an ordinance that restricted the location of sexually oriented businesses to industrial zones. Christal's was not located in an industrial zone.

Under Aurora City Code § 26–441 (1994), a sexually oriented business includes, inter alia, an adult bookstore, "adult novelty store, or adult video store." Section 26–441 further defines an "adult bookstore, adult novelty store, or adult video store" as:

A commercial establishment which devotes a *significant or substantial portion* of its stock in trade or interior floor space to the sale, rental or viewing, for any

form of consideration, of books, magazines, periodicals, or other printed matter or photographs, films, motion pictures, video cassettes, slides, or other visual representations *which are characterized by* the depiction or description of specified sexual activities or specified anatomical areas.

(Emphasis added.)

In 1993, plaintiff filed an action in federal district court challenging the constitutionality of the ordinance under the First and Fourteenth Amendments to the United States Constitution. The district court concluded that the ordinance violated the First Amendment, but that ruling was reversed on appeal. *Z.J. Gifts D–2, L.L.C. v. City of Aurora,* 136 F.3d 683 (10th Cir.1998)(*Z.J. Gifts I*). On remand, the federal district court entered judgment dismissing plaintiff's federal constitutional claims. The judgment then became final.

Approximately forty-five days later, in October 1998, plaintiff filed this action in state court for injunctive and declaratory relief, seeking to prevent the City from enforcing the ordinance against Christal's. Plaintiff challenged the ordinance as unconstitutionally vague under the United States and Colorado Constitutions and asserted that it wished to comply with the ordinance, but was unable to do so because the City had enacted no ascertainable guidelines defining "significant" or "substantial." The City filed a motion to dismiss plaintiff's complaint under the principles of res judicata and collateral estoppel based upon the Tenth Circuit's decision in *Z.J. Gifts I*, which resolved the federal constitutional issues against plaintiff. The City also filed a counterclaim and motion seeking to enjoin plaintiff from operating a sexually oriented business without a sexually oriented business license in any zone other than an industrial zone.

Following three separate hearings, the trial court rejected plaintiff's claims and granted the City's motion for preliminary injunction. Plaintiff appealed and secured a stay of the order pending appeal. A division of this court affirmed the trial court's decision. *Z.J. Gifts D–2, L.L.C. v. City of Aurora,* (Colo.App. No. 99CA1853, Apr. 26, 2001)(not published pursuant to C.A.R. 35(f))(*Z.J. Gifts II*). The matter was then remanded for trial.

After trial, the court dismissed plaintiff's federal constitutional claims as barred by res judicata based upon *Z.J. Gifts I.* The court declined to evaluate the ordinance under Colo. Const. art. II, § 10 because it determined that this article did not extend broader protection in the context of sexually oriented business regulations than the First Amendment and therefore that the state constitutional claims were not different from the federal constitutional claims previously decided against plaintiff in *Z.J. Gifts I.* The court further concluded that the terms "significant" and "substantial" were not unconstitutionally vague under the Colorado Constitution. The court permanently enjoined plaintiff from operating a sexually oriented business in its present location and in violation of the licensing requirements of the ordinance.

Plaintiff filed a motion for reconsideration based on several legal decisions issued after *Z.J. Gifts I.* The trial court denied the motion, and this appeal followed.

## I. Res Judicata

■ Plaintiff contends that the trial court erred by failing to consider its federal constitutional claims in the context of the recent Supreme Court decision, *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002), which plaintiff asserts implicitly overruled *Z.J. Gifts I.* Plaintiff contends that *Alameda Books* placed a stricter evidentiary burden on the City to prove by a designated quantum of evidence that the ordinance is a constitutional regulation. Plaintiff argues that the trial court should have considered its federal constitutional claims under the new, heightened evidentiary burden set forth in *Alameda Books.* In effect, plaintiff asserts that the trial court erred in ruling that its First and Fourteenth Amendment claims were barred by the doctrine of res judicata. We disagree.

■ Res judicata operates as a bar to a second action on the same claim litigated in a prior proceeding where there was a final judgment and identity of subject matter,

claims for relief, and parties to the action. *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824 (Colo.1991).

▮ In barring the relitigation of tried matters, res judicata serves distinct and important public and private values. As the United States Supreme Court has stated, res judicata serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

Although plaintiff concedes that *Z.J. Gifts I* became final and resolved its federal constitutional claims, it nevertheless asserts that the Supreme Court's decision in *Alameda Books* imposes a new, heightened evidentiary burden on the City to show specifically the secondary adverse effects of sexually oriented businesses providing no onsite adult entertainment. Plaintiff argues that, because the City did not furnish such evidence, but relied only upon studies from other states that examined the effects of sexually oriented businesses generally and the effects of adult bookstores on surrounding communities, the trial court should not have relied on the Tenth Circuit's holding in *Z.J. Gifts I* and should have reconsidered the constitutional issues in light of the new evidentiary standard announced in *Alameda Books*.

### A. The *Alameda Books* standard

We conclude that *Z.J. Gifts I* in fact comports with the principles announced in *Alameda Books*.

In holding that the City's ordinance satisfied *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the Tenth Circuit stated that the City need only rely upon "evidence ... *reasonably* believed to be relevant to the problem that the city addresses." *Z.J. Gifts I, supra*, 136 F.3d at 687 (quoting *Renton, supra*, 475 U.S. at 51–52, 106 S.Ct. at 931). "If the city can show that the ordinance affects 'that category of [businesses] shown to produce the unwanted secondary effects,' the ordinance will stand." *Z.J. Gifts I, supra*, 136 F.3d at 687 (quoting *Renton, supra*, 475 U.S. at 54, 106 S.Ct. at 932). The court reasoned that the City's reliance on studies utilizing slightly dissimilar businesses did not affect the ordinance's content-neutrality, *Z.J. Gifts I, supra* (citing *ILQ Invs., Inc. v. City of Rochester*, 25 F.3d 1413 (8th Cir.1994)), and whether sexually oriented materials are viewed onsite or offsite is "constitutionally insignificant for purposes of determining an ordinance's content-neutrality," "particularly in light of the [Supreme] Court's strong statements regarding the government's interest in regulating such businesses in *Young [v. America Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)] and *Renton*." *Z.J. Gifts I, supra*, 136 F.3d at 687–88.

In *Alameda Books*, the Supreme Court also adopted the evidentiary standard announced in *Renton* that a municipality may rely on evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial, independent governmental interest. *Alameda Books, supra*, 535 U.S. at 438, 122 S.Ct. at 1736. The Court explained that the "city certainly bears the burden of providing evidence that supports a link between concentrations of adult operations and asserted secondary effects," but the city did not "bear the burden of providing evidence that rules out every theory for the link between concentrations of adult establishments that is inconsistent with its own." *Alameda Books, supra*, 535 U.S. at 437, 122 S.Ct. at 1735. The Court refused to "set such a high bar for municipalities that want to address merely the secondary effects of protected speech." *Alameda Books, supra*, 535 U.S. at 438, 122 S.Ct. at 1736. It stated that cities are entitled to rely, in part, on "appeal to common sense," rather than "empirical data," at least where there is no "actual and convincing evidence from plaintiffs to the contrary." *Alameda Books, supra*, 535 U.S. at 439, 122 S.Ct. at 1736.

In so holding, the *Alameda Books* plurality provided the following observation regarding

the deference properly accorded to legislative findings:

> This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Alameda Books, supra*, 535 U.S. at 438–39, 122 S.Ct. at 1736. The plurality described its "deference to the evidence presented by the city" as "the product of a careful balance between competing interests." *Alameda Books, supra*, 535 U.S. at 440, 122 S.Ct. at 1737. On the one hand, courts have an obligation to exercise independent judgment in First Amendment cases, but on the other hand the plurality acknowledged "that the [city] is in a better position than the Judiciary to gather and evaluate data on local problems." *Alameda Books, supra*, 535 U.S. at 440, 122 S.Ct. at 1737.

Justice Kennedy concurred separately. However, contrary to plaintiff's contention, he did not criticize the plurality's approach to the evidence necessary to support a secondary effects justification. If anything, Justice Kennedy's comments on that issue appear somewhat more deferential to the cities: "As a general matter, courts should not be in the business of second-guessing fact-bound empirical assessments of city planners." *Alameda Books, supra*, 535 U.S. at 451, 122 S.Ct. at 1743 (Kennedy, J., concurring). "The Los Angeles City Council knows the streets of Los Angeles better than we do. It is entitled to rely on that knowledge; and if its inferences appear reasonable, we should not say there is no basis for its conclusion." *Alameda Books, supra*, 535 U.S. at 451–52,

122 S.Ct. at 1743 (Kennedy, J., concurring) (citation omitted).

We do not find anything in *Alameda Books* to suggest the trial court must reconsider its ruling that plaintiff was precluded by res judicata from again raising federal constitutional claims that were considered and rejected in *Z.J. Gifts I*.

*Alameda Books* found the City of Los Angeles could reasonably rely on its 1977 study regarding concentration of adult entertainment establishments to draw inferences about secondary effects arising from concentration of adult operations within a single establishment. If anything, the Supreme Court's decision in *Alameda Books* is consistent with the Tenth Circuit's decision in *Z.J. Gifts I. See also World Wide Video, Inc. v. City of Spokane*, 227 F.Supp.2d 1143 (E.D.Wash.2002)(declining to read *Alameda Books* as overruling or substantially changing *Z.J. Gifts I*).

### B. Post-*Alameda Books* Decisions

Plaintiff relies on two cases decided post-*Alameda Books* for its argument that *Z.J. Gifts I* has been implicitly overruled or modified and, therefore, its federal constitutional claims should have been reexamined by the trial court. Both cases involved adult stores selling materials for "take-home" use only.

In *DiMa Corp. v. High Forest Township*, 2003 WL 21909571 (D.Minn. No. Civ.02–3800, Aug. 7, 2003), an unpublished decision, the federal district court determined that "*Alameda Books*. certainly clarifies the manner in which the Court should determine whether the municipality relied on evidence that was 'reasonably believed to be relevant' for 'demonstrating a connection between speech and a substantial, independent governmental interest.'" The court determined that genuine issues of material fact existed as to whether the city acted reasonably in relying upon studies that were conducted in metropolitan, not rural, areas and "did not particularly examine the secondary effects of purely take-home fare." We are not persuaded by this decision, which is not precedent even in the Eighth Circuit. *See* 8th Cir. R. 28A(i).

The Fifth Circuit held that to meet the narrow tailoring requirement, a city must provide "at least some substantial evidence of the secondary effects of establishments that sell adult products solely for off-site consumption." *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 295, *clarified*, 352 F.3d 938 (5th Cir.2003). The court noted that the studies relied upon by the city either entirely excluded establishments that provide only take-home videos and books or included them, but did not differentiate the data collected from enterprises that provide onsite adult entertainment. *Encore Videos, supra.*

Although these cases question the reasoning in *Z.J. Gifts I*, they cannot and do not overrule its holding. Nevertheless, even if *Alameda Books* and *Encore Videos* somehow altered the evidentiary analysis to be employed, plaintiff's federal constitutional claims are still barred by res judicata.

■ The application of res judicata is not thwarted simply because a court's ruling was based on legal principles subsequently rejected in an unrelated case. *Lobato v. Taylor*, 70 P.3d 1152 (Colo.2003); *see also Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499 (11th Cir.1984)(finding res judicata applicable despite a subsequent reinterpretation of Alabama's statute of limitations). Res judicata cannot be avoided here simply because the Supreme Court may have clarified an evidentiary threshold in a legal decision to which plaintiff was not a party. *See Lobato v. Taylor, supra; see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981)("[T]he res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong. . . . '[T]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert.'")(quoting *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325, 47 S.Ct. 600, 604, 71 L.Ed. 1069 (1927), and *Reed v. Allen*, 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054 (1932)).

Although cases exist where a misapplication of the law has resulted in the waiver of res judicata, in those cases the legal correction was based on significant changes in fundamental constitutional rights. *Lobato v. Taylor, supra; see also Christian v. Jemison*, 303 F.2d 52 (5th Cir.1962)(res judicata not applied to state court judgment after Supreme Court overruled separate-but-equal doctrine in *Brown v. Bd. of Educ.*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954)). Assuming, arguendo, that the evidentiary analysis in *Alameda Books* differs from the analysis in *Z.J. Gifts I*, it is not of such magnitude as to compel us to overlook the longstanding and important principles supporting the application of the res judicata doctrine. *See Lobato v. Taylor, supra.*

Thus, we conclude the trial court did not err in dismissing plaintiff's federal constitutional claims under the doctrine of res judicata.

### II. Colo. Const. art. II, § 10

Plaintiff asserts that it may nevertheless maintain constitutional claims under Colo. Const. art. II, § 10 and that the trial court erred in determining that this provision does not provide broader protections than the United States Constitution in the context of municipal regulations of sexually oriented businesses. In other words, plaintiff asserts that, while the federal constitutional claims may be barred, its state constitutional claims are not. We agree that the claims are not barred, but nevertheless perceive that plaintiff cannot prevail here.

Colo. Const. art. II, § 10 provides, as relevant here, that "every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty." This section provides broader protection for freedom of speech in the context of political speech and obscenity than does the First Amendment to the United States Constitution. *Bock v. Westminster Mall Co.*, 819 P.2d 55 (Colo.1991).

None of the cases cited by plaintiff in support of its proposition, however, involves a challenge to the location of adult businesses regulated through licensing ordinances that are directed at negative secondary effects

associated with the free speech aspects of adult entertainment, as opposed to the regulation of obscenity or the outright restriction of free speech. *See, e.g., Bock v. Westminster Mall Co., supra* (discussing the plaintiffs' right to distribute political leaflets in a shopping mall); *People v. Ford,* 773 P.2d 1059 (Colo.1989)(addressing the constitutionality of the Colorado obscenity statute); *People v. Seven Thirty–Five E. Colfax, Inc.,* 697 P.2d 348 (Colo.1985)(same). In analyzing a local ordinance regulating nude dancing, the supreme court relied almost exclusively on federal cases in determining that the ordinance did not violate the free speech protections of either the federal or state constitutions. *7250 Corp. v. Bd. of County Comm'rs,* 799 P.2d 917 (Colo.1990).

In the context of zoning regulations, we have found no Colorado appellate opinions that have interpreted the state constitution to provide greater protection than the federal constitution. *See Z.J. Gifts D–4, L.L.C. v. City of Littleton,* 311 F.3d 1220, 1241 n. 20 (10th Cir.2002)(*Z.J. Gifts III*)(*cert. granted,* —— U.S. ——, 124 S.Ct. 383, 157 L.Ed.2d 274 (2003)). Accordingly, we reject this contention.

### III. C.R.C.P. 65(d).

■ Plaintiff also argues that the trial court's injunctive order violates C.R.C.P. 65(d). We disagree.

C.R.C.P. 65(d) provides, in pertinent part: "Every order granting an injunction ... shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained....:"

■ A trial court has broad discretion to formulate the terms of injunctive relief when equity so requires. However, an injunction prohibiting conduct must be sufficiently precise to enable the party subject to the equitable decree to conform its conduct to the requirements thereof. C.R.C.P. 65(d); *Colorado Springs Bd. of Realtors, Inc. v. State,* 780 P.2d 494 (Colo.1989).

Here, the trial court's injunctive order states that "Plaintiff is hereby permanently enjoined from operating a sexually oriented business at 15451 East Mississippi Avenue, Aurora, Colorado in Arapahoe County. Plaintiff is further permanently enjoined from operating a sexually oriented business without a sexually oriented business license." The order contains detailed findings of fact and conclusions of law setting forth the reasons for its issuance and describing the act or acts from which plaintiff is restrained. Also, there are findings regarding the provisions of the City ordinance that plaintiff violated.

Plaintiff's primary contention is that the definition of "sexually oriented business" includes the terms "significant" and "substantial," which in its view are overly vague, and therefore it has no notice of what is required to comply with the injunctive order. We disagree.

■ Statutory terms need not be defined with mathematical precision to pass constitutional muster. "Instead, the statutory language must strike a balance between two potentially conflicting concerns: it must be specific enough to give fair warning of the prohibited conduct, yet must be sufficiently general to address the problem under varied circumstances and during changing times." *Parrish v. Lamm,* 758 P.2d 1356, 1368 (Colo. 1988).

The trial court determined that the terms "significant" or "substantial" are not unconstitutionally vague and that the ordinance provides a person of ordinary intelligence a reasonable opportunity to understand its meaning and application.

A division of this court similarly rejected a vagueness challenge to the term "significant":

"Significant" means "deserving to be considered; important; notable," and "significantly," thus means "to a significant degree." *See Webster's Third New International Dictionary* 2116. The antonyms of "significant" include meaningless, trivial, trifling, paltry, and picayune. *See Roget's Thesaurus* 639 (Bantam Rev. Ed.1990).

"Significant" is a term used extensively throughout statutory language in Colorado to describe the extent of a specific status or condition. *See* § 13–21–401(1), C.R.S.

(1987 Repl.Vol. 6A)("[Manufacturer] also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer."); § 16–4–101(1)(b), C.R.S. (1994 Cum. Supp.)(no bail required in cases of certain crimes of violence if the court finds the proof is evident that the crime occurred and that "the public would be placed in significant peril if the accused were released"); § 22–20–103(1.5), C.R.S. (1994 Cum.Supp.)(children with disabilities includes children with "significant limited intellectual capacity" or "significant identifiable emotional disorder[s]"). Indeed, our research has revealed over 200 statutory sections which have used the term without any reported interpretive difficulty. *City of Colorado Springs v. Bd. of County Comm'rs,* 895 P.2d 1105, 1114 (Colo.App. 1994).

The Supreme Court and other courts have also held that the terms "significant" and "substantial" as used in the definition of adult stores are not so indefinite as to render an ordinance void and unenforceable. *See Young v. Am. Mini Theatres, Inc., supra; Excalibur Group, Inc. v. City of Minneapolis,* 116 F.3d 1216 (8th Cir.1997); *ILQ Invs., Inc. v. City of Rochester, supra; S & G News, Inc. v. City of Southgate,* 638 F.Supp. 1060 (E.D.Mich.1986), *aff'd,* 819 F.2d 1142, 1987 WL 37574 (6th Cir.1987); *15192 Thirteen Mile Road, Inc. v. City of Warren,* 626 F.Supp. 803 (E.D.Mich.1985); *Golden Triangle News, Inc. v. Corbett,* 689 A.2d 974 (Pa. Commw.Ct.1997). We conclude that the reasoning of these cases is persuasive.

Furthermore, courts have determined that the terms "substantial" and "significant" have recognized meanings in the English language, and their use in the definition of "adult bookstore" does not render them vague merely because a percentage of business devoted to floor space, sales, or inventory is not specified. *See State v. Holmberg,* 545 N.W.2d 65 (Minn.Ct.App.1996)(ordinance does not require any specific percentage; it merely requires that a substantial or significant portion of the store's stock in trade consists of sexually oriented material); *Gold-*

*en Triangle News, Inc. v. Corbett, supra,* 689 A.2d at 984–85 (limiting the definition of "adult bookstore" to establishments that meet a specific sales percentage would frustrate legislative purpose by drawing arbitrary classifications).

Finally, we reject plaintiff's argument that *Z.J. Gifts III* mandates that a percentage test be implemented as a guide to what constitutes significant or substantial. In *Z.J. Gifts III,* the Tenth Circuit did not address whether the City's ordinance was void for vagueness because it determined that plaintiff lacked standing to challenge the constitutionality of the ordinance. However, the court noted in dicta that a "common method of narrowing construction has been to develop a percentage that will act as a guide as to what constitutes 'significant or substantial'" and that the uncertainty in the City's ordinance is easily susceptible of a narrowing construction. *Z.J. Gifts III, supra,* 311 F.3d at 1229–30. Because this observation was not necessary to the decision in that case, it was dicta that does not affect our conclusion here. *See Town of Eagle v. Scheibe,* 10 P.3d 648 (Colo.2000); *see also Main Elec., Ltd. v. Printz Servs. Corp.,* 980 P.2d 522, 526 n. 2 (Colo.1999)("Dictum is not the law of the case and is not controlling precedent.").

### IV. Prompt Judicial Review

■ Plaintiff contends that the ordinance's failure to provide prompt judicial review of a license denial violates its First Amendment rights of free speech and its Fourteenth Amendment rights to due process. Plaintiff's challenge to the prompt judicial review provision is now moot, and we will not address it. *See Grossman v. Dean,* 80 P.3d 952 (Colo.App.2003)(when an issue is moot, a court normally refrains from addressing it).

The Tenth Circuit declared an ordinance nearly identical to the one at issue here unconstitutional because it failed to provide a prompt judicial determination of a license denial as required by the First and Fourteenth Amendments of the United States Constitution. *Z.J. Gifts III, supra* (*cert. granted* as to the following issue: whether the requirement of prompt judicial review imposed by *FW/PBS, Inc. v. City of Dallas,*

493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), entails a prompt judicial determination or a prompt commencement of judicial proceedings).

In response to the Tenth Circuit's decision in *Z.J. Gifts III*, the City repealed its old ordinance. The new ordinance requires a judicial determination of an adverse administrative licensing decision within seventy-five days from the date the complaint was served on the director of finance. Because the City amended its ordinance to comply with the directives of *Z.J. Gifts III*, plaintiff's claim is moot. A determination of the issue here would have no practical effect upon the existing controversy because the challenged ordinance provision has been repealed. *See People v. McMurrey*, 39 P.3d 1221 (Colo.App. 2001)(an issue on appeal is moot when the relief, if granted, would have no practical effect on the controversy).

Not only did the City change its provision for judicial review to seventy-five days, but plaintiff has continued to operate its business at all times pending appellate review. Thus, plaintiff received full and complete judicial review and was not harmed by any delay in such review.

### V. Retroactive Application of § 38–1–101(3)(a)

█ We also reject plaintiff's contention that § 38–1–101(3)(a), C.R.S.2003, prevents the City from enforcing the zoning restrictions against it.

Section 38–1–101(3)(a), which became effective in June 2003, provides: "Notwithstanding any other provision of law to the contrary, a local government shall not enact or enforce an ordinance, resolution, or regulation that requires a nonconforming property use that was lawful at the time of its inception to be terminated or eliminated by amortization."

Plaintiff argues that its business was a conforming use and validly operating at the time the City's ordinance was enacted in 1993; therefore, plaintiff argues that it is being forced by ex post facto regulation to

close its doors through the process of unlawful amortization. However, the trial court's permanent injunction order became final in November 2002, months before § 38–1–101(3)(a) became law. Because our review is limited to whether the trial court erred in issuing a permanent injunction, we must look at the law in effect when the trial court issued its decision. Section 38–1–101(3)(a) was not the law and was not before the trial court when it decided this case; thus, we cannot conclude that under § 38–1–101(3)(a) the trial court erred in issuing a permanent injunction unless the statute were to apply retroactively.

Plaintiff urges us to conclude that the statute applies retroactively so as to render the trial court's judgment an enforcement contrary to § 38–1–101(3)(a). We are not persuaded.

Absent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date. A statute is retroactive if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date. *In re Estate of DeWitt*, 54 P.3d 849 (Colo. 2002).

█ The constitutional proscription on retrospectivity states that "[n]o … law … retrospective in its operation … shall be passed by the general assembly." Colo. Const. art. II, § 11. This proscription prevents unfairness that would result from changing the consequences of an act after that act has occurred. *Van Sickle v. Boyes*, 797 P.2d 1267 (Colo.1990). A statute is retrospective if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Denver S. Park & Pac. Ry. v. Woodward*, 4 Colo. 162, 167 (1878).

The statutory language here did not specify that the amendment was to be applied retroactively, and we decline to attribute to

the General Assembly an intent to enact a statutory amendment controlling amortization of nonconforming uses that took place before the amendment was enacted. Therefore, we hold that the statute does not apply here. *See Mission Viejo Co. v. Bd. of Equalization,* 942 P.2d 1251 (Colo.App.1996). Accordingly, the trial court did not err in enforcing an ordinance which required a licensee to operate, if at all, in an appropriately zoned area of the City.

The judgment is affirmed.

Judge CASEBOLT and Judge LOEB concur.