JAM RESTAURANT, INC., a Colorado corporation, d/b/a Bella's Cabaret, Plaintiff–Appellee and Cross–Appellant,

v.

CITY OF LONGMONT, an incorporated home rule municipality, Defendant–Appellant and Cross–Appellee.

No. 04CA1705.

Colorado Court of Appeals, Div. II.

Feb. 23, 2006.

Certiorari Denied July 31, 2006.*

* Chief Justice MILLARKEY would grant as to the following issues:

Whether the court of appeals erred in affirming the order of the district court holding that the enactment of C.R.S. section 38-1-101(3)(a) did not infringe upon the role of the judiciary and violate the separation of powers doctrine.

Whether the court of appeals erred in affirming the order of the district court holding that the enactment of C.R.S. section 38-1-101(3) was not an unconstitutional infringement upon the home rule power of the City of Longmont.

Schwartz & Goldberg, P.C., Arthur M. Schwartz, Michael W. Gross, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Claybourne M. Douglas, City Attorney, Longmont, Colorado; Arrington & Associates, P.C., Barry K. Arrington, Arvada, Colorado, for Defendant–Appellant and Cross–Appellee.

Erin E. Goff, Denver, Colorado, for Amicus Curiae Colorado Municipal League.

KIRSHBAUM **, Justice.

Defendant, City of Longmont, appeals the trial court's order precluding the amortization, under a municipal zoning ordinance, of the sexually oriented business operated by plaintiff, JAM Restaurant, Inc., and upholding the constitutionality of § 38–1–101(3)(a), C.R.S.2005. JAM cross-appeals the trial court's determination that the judicial review provisions of the municipal ordinance do not violate the First and Fourteenth Amend-

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

ments to the United States Constitution. We affirm.

## I.

JAM, doing business as Bella's Cabaret, operates a cabaret in Longmont that features entertainment involving nude dancing. JAM began operating as a topless and nude dancing establishment in 2001, after the Longmont Licensing Authority revoked its liquor license. JAM is classified by Longmont as a sexually oriented business.

Longmont is a home rule municipality under article XX, section 6, of the Colorado Constitution. In August 2001, Longmont enacted a municipal ordinance limiting the location of sexually oriented businesses to general industrial or mixed industrial zones. Longmont Mun.Code § 6.65.140. The ordinance also requires sexually oriented businesses to obtain licenses and to follow specific regulations regarding the conduct of their employees. JAM is not located in a general or mixed industrial zone and has not obtained a license to operate as a sexually oriented business.

In 2002, JAM filed suit against Longmont seeking a declaratory judgment that the ordinance was unconstitutional on its face and as applied and requesting an injunction against the enforcement of the ordinance. JAM also sought damages, attorney fees, and other relief. Longmont filed a motion to dismiss and a counterclaim alleging ordinance violations and requested a permanent injunction prohibiting JAM from operating without a valid license. The trial court dismissed several of JAM's claims that alleged the unconstitutionality of the ordinance, concluding such claims were either abandoned or moot.

JAM then filed an amended complaint seeking the same relief.

While JAM's case was pending in the trial court, the General Assembly enacted § 38–1–101(3)(a), which was effective on June 6, 2003, and provides in pertinent part: "a local government shall not enact or enforce an ordinance, resolution, or regulation that requires a nonconforming property use that was lawful at the time of its inception to be terminated or eliminated by amortization."

After a bench trial, the trial court determined "the state's interest in fulfilling its constitutional mandate to protect property rights is sufficiently dominant to override Longmont's interest in zoning" and concluded § 38–1–101(3)(a) preempted Longmont's municipal zoning ordinances. Based on its application of § 38–1–101(3)(a) to JAM's business, the trial court then determined the statute precluded amortization; JAM had not violated Longmont's zoning ordinance; and because Longmont did not attempt to enforce the zoning ordinance until after the effective date of § 38–1–101(3)(a), the "application of § 38–1–101(3), C.R.S.2005 to Longmont in this case would not constitute an inappropriate retroactive application of the statute." Because the trial court found the ordinance unenforceable as to JAM, it did not consider whether the ordinance was unconstitutional on this ground. The trial court also determined the judicial review provisions of the ordinance satisfied the prompt review standards required by the First and Fourteenth Amendments to the United States Constitution.

## II.

Longmont contends the trial court erred by ruling the state statute prevails over Longmont's ordinance. Longmont argues § 38–1–101(3)(a) is unconstitutional as applied because zoning is a matter of local concern and, accordingly, its zoning ordinance preempts the state statute pursuant to its home rule authority. We disagree.

The Colorado Constitution grants municipalities that satisfy certain size requirements and adopt home rule charters the authority to legislate on issues of local concern. Colo. Const. art. XX, § 6. A home rule municipality's legislation on local matters preempts any conflicting state legislation. *City of Northglenn v. Ibarra*, 62 P.3d 151 (Colo.2003). "[R]egulated matters fall into one of three broad categories: (1) matters of local concern; (2) matters of statewide concern; and (3) matters of mixed state and local concern.... [W]hether state or local legislation controls in a given situation

often turns on whether a matter is a local, state or mixed concern." *City of Northglenn v. Ibarra, supra,* 62 P.3d at 155 (citing *City of Commerce City v. State,* 40 P.3d 1273, 1279 (Colo.2002)).

■ In matters of local concern, both a municipality and the state may adopt legislation. However, the municipality's legislation prevails if there is a conflict between municipal and state legislation. *City of Northglenn v. Ibarra, supra; see City & County of Denver v. Qwest Corp.,* 18 P.3d 748 (Colo.2001) (concluding that a home rule municipality's enactment controls when a conflicting state statute addresses a matter of local concern).

■ When the state enacts legislation concerning matters of statewide concern, a home rule municipality may not legislate in that area unless expressly authorized to do so by constitution or by a state statute. *City of Northglenn v. Ibarra, supra.* Furthermore, if a matter relates to both local and statewide concerns, local enactments and state statutes regulating such a mixed matter may coexist if they do not conflict. *City of Northglenn v. Ibarra, supra,* 62 P.3d at 155. However, if a conflict between state and home rule legislation exists in an area of mixed concern, the state statute prevails. *City of Commerce City v. State, supra.*

■ A court must consider the totality of the circumstances when deciding whether a particular matter is of state, local, or mixed concern. *City of Commerce City v. State, supra.* The categories may overlap, and there is no "specific test for courts to apply" when making this decision. *City of Commerce City v. State, supra,* 40 P.3d at 1280. Several general factors may be considered by a court in considering whether a matter should be characterized as state, local, or mixed. These factors include:

(1) the need for statewide uniformity of regulation; (2) the impact of the measure on individuals living outside the municipality; (3) historical considerations concerning whether the subject matter is one traditionally governed by state or local government; and (4) whether the Colorado Constitution specifically commits the particular matter to state or local regulation.

*Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 37 (Colo.2000).

Whether Longmont's ordinance or the state statute is applicable to JAM depends on whether the ordinance regulates a local, statewide, or mixed matter. As such determination is a question of law, we review the trial court's decision de novo. *See People v. Cross,* 127 P.3d 71 (Colo.2006).

**A.**

We first consider whether there is a need for statewide uniformity of regulation of zoning restrictions. *See Town of Telluride v. Lot Thirty–Four Venture, L.L.C., supra.*

Longmont asserts zoning is a local matter, that there is no need for statewide uniformity, and that local flexibility is required when municipalities make amortization decisions. It also contends there is no statewide interest in zoning regulations that address amortization issues. We are not persuaded.

■ The Colorado Constitution grants home rule cities broad authority to draft and implement ordinances that address local matters. *See* Colo. Const. art. XX, § 6. In general, zoning is classified as a local and municipal matter. *City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244 (Colo.2000); *see Voss v. Lundvall Bros.,* 830 P.2d 1061 (Colo.1992); *City of Greeley v. Ells,* 186 Colo. 352, 527 P.2d 538 (1974); *Roosevelt v. City of Englewood,* 176 Colo. 576, 492 P.2d 65 (1971). Accordingly, home rule cities may draft and implement zoning ordinances so long as the ordinances comply with any limitations in the state constitution and the city's charter. *City of Colorado Springs v. Securcare Self Storage, Inc., supra.*

■ The Colorado Constitution provides that all persons have certain inalienable rights, which include the right to acquire, possess, and protect property. Colo. Const. art. II, § 3. Furthermore, the government cannot take or damage private property without providing just compensation to the owner prior to the divestment or diminution of the owner's proprietary rights. Colo. Const. art. II, § 15. Accordingly, a munici-

pality's authority to enact and enforce zoning ordinances is limited by the takings clause in the Colorado Constitution.

■ Section 38–1–101(3)(a) indicates the General Assembly's concern regarding home rule cities enacting zoning ordinances that eliminate or terminate nonconforming property uses which were lawful at their inception through amortization "without providing just compensation to the property owners." Colo. Sess. Laws 2003, ch. 420, § 1(1)(d) at 2666. Furthermore, the General Assembly specifically concluded that "[t]he protection of the inalienable property rights of persons whose initially lawful property uses may be terminated or eliminated through amortization of nonconforming uses is a matter of statewide concern." Colo. Sess. Laws 2003, ch. 420, § 1(2)(a) at 2667. Thus, the General Assembly enacted § 38–1–101(3)(a) to restrict the abilities of local governments to unjustly deprive property owners of their inalienable rights. Colo. Sess. Laws 2003, ch. 420, § 1 at 2666–67.

### B.

We next consider the extraterritorial impact of the zoning ordinance. We conclude the impact is not substantial.

Extraterritorial impact involves state residents outside the municipality and requires consideration of the "potential ripple effect from a local ordinance." *Town of Telluride v. Lot Thirty–Four Venture, L.L.C., supra,* 3 P.3d at 38. For the court "[t]o find a ripple effect … the extraterritorial impact must have serious consequences to residents outside the municipality, and be more than incidental or *de minim[i]s.*" *City of Northglenn v. Ibarra, supra,* 62 P.3d at 161.

Although the amortization of sexually oriented businesses in Longmont may result in those businesses relocating to neighboring municipalities, there was no showing that this possibility will seriously impact residents outside of Longmont.

### C.

We also consider whether zoning is traditionally governed by state or local government. We conclude § 38–1–101(3)(a) addresses a state issue.

Home rule cities traditionally enact and enforce zoning ordinances as a matter of local concern. *See, e.g., City of Colorado Springs v. Securcare Self Storage, Inc., supra; Voss v. Lundvall Bros., supra; City of Greeley v. Ells, supra; Roosevelt v. City of Englewood, supra.* However, § 38–1–101(3)(a) enforces constitutionally protected property rights and prohibits the unconstitutional taking of private property without just compensation.

We conclude constitutionally protected property interests are a matter of statewide concern and must be treated uniformly throughout the state. While zoning regulations are typically a matter of local concern, § 38–1–101(3)(a) is not a zoning regulation. Rather, it prohibits the unconstitutional taking of property without just compensation.

### D.

We also must determine whether the Colorado Constitution specifically commits zoning to state or local regulation. We conclude the issue here is not exclusively committed to local regulation.

As previously noted, § 38–1–101(3)(a) is not a zoning regulation. It was enacted to protect inalienable property rights recognized by the Colorado Constitution. Because inalienable property rights are involved, both local and state concerns are implicated, and the constitution "cannot be read to dictate the matter at issue as one of exclusively local concern." *City of Northglenn v. Ibarra, supra,* 62 P.3d at 162 (quoting *City of Commerce City v. State, supra,* 40 P.3d at 1283–84).

Although zoning regulations generally have little extraterritorial impact and are traditionally a matter of local concern, in consideration of the legislative declaration respecting § 38–1–10(3)(a) and the importance of protecting constitutionally based property rights, we conclude preventing the taking of private property without just compensation is a matter of statewide or, at the least, mixed concern.

■ We therefore conclude § 38–1–101(3)(a) is constitutional, does not violate the home rule amendment to the Colorado Constitution, and prevails over Longmont's zoning ordinance as applied to JAM.

### III.

Longmont contends the trial court erred by retroactively applying § 38–1–101(3)(a) to preclude amortization of JAM's sexually oriented business. We disagree.

■ Unless the legislature expresses a contrary intent, a statute applies prospectively to transactions that occur after its effective date. *Z.J. Gifts D–2, L.L.C. v. City of Aurora,* 93 P.3d 633 (Colo.App.2004); *see Mission Viejo Co. v. Bd. of Equalization,* 942 P.2d 1251, 1252 (Colo.App.1996) ("[l]egislation is presumed to have prospective effect unless the General Assembly expresses contrary intent"). In contrast, a statute has retroactive effect "if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date" or "if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Z.J. Gifts D–2, L.L.C. v. City of Aurora, supra,* 93 P.3d at 641 (quoting *Denver, S. Park & Pac. Ry. v. Woodward,* 4 Colo. 162, 167 (1878)).

■ A retroactive statute is not per se unconstitutional "merely because the facts upon which it operates occurred before adoption of the statute." *City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 445 (Colo.2000). Section 38–1–101(3)(a) prohibits a local government from terminating or eliminating by amortization a nonconforming property use that was lawful at its inception. A division of this court previously concluded the legislature did not explicitly or implicitly intend for § 38–1–101(3)(a) to apply retroactively. *Z.J. Gifts D–2, L.L.C. v. City of Aurora, supra.* We similarly conclude § 38–1–101(3)(a) is prospective and applies to transactions that occurred after June 6, 2003, its effective date.

Longmont argues the trial court retroactively applied the statute to allow JAM's nonconforming use more than one year after that use became illegal. Longmont also contends because JAM's amortization period expired more than one year before the effective date of the statute, the trial court erred in concluding the statute barred Longmont's claims regarding amortization. We are not persuaded.

■ Longmont sought an injunction based on the zoning provisions of the ordinance after the effective date of the statute. Although Longmont filed an earlier counterclaim on May 29, 2002, it then sought an injunction based on the licensing provisions of the ordinance, not the zoning provisions.

Section 38–1–101(3)(a) applies to injunctions sought after its effective date. Because Longmont did not seek to enforce the zoning provisions of the ordinance until after the statute became effective, no retroactive application of the statute occurred.

### IV.

Finally, Longmont contends the General Assembly violated the separation of powers doctrine when it purported to overrule by statute the Colorado Supreme Court's interpretation of reasonable amortization periods for nonconforming uses. We disagree.

Section 38–1–101(3)(a) does not prohibit all amortization of nonconforming uses. To enforce property rights as mandated in the Colorado Constitution, it prohibits local government from eliminating or terminating nonconforming uses that were lawful at their inception by amortization. The statute does not address whether amortization periods are reasonable.

Accordingly, we conclude § 38–1–101(3)(a) does not violate the separation of powers doctrine.

### V.

On cross-appeal, JAM contends the trial court erred in concluding that § 6.65.120 of the Longmont Municipal Code provides an adequate avenue for prompt judicial review for denial of license applications in compli-

ance with the First and Fourteenth Amendments to the United States Constitution. We disagree.

In relevant part, § 6.65.120(I)(5) provides: When a decision to deny an application for a new license becomes final, the aggrieved party whose application has been denied shall have a right to review of such action in the Longmont municipal court .... Review shall be limited to a determination of whether the city manager or manager's designee exceeded their [sic] jurisdiction or abused their [sic] discretion .... The decision of the municipal court may be appealed to the state district court.

Section 6.65.120(I)(5) also specifies that the municipal court must issue a ruling within seventy-five days from the date on which the complaint is filed. A "license for a First Amendment-protected business must be issued within a reasonable period of time," and "there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 228, 110 S.Ct. 596, 606, 107 L.Ed.2d 603 (1990)(citing *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)). Thus, a licensing scheme must provide adequate safeguards to ensure sufficiently prompt judicial review. *City of Littleton v. Z.J. Gifts D–4, L.L.C.*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004).

██ A judicial review process is sufficient to ensure prompt judicial review "as long as the courts remain sensitive to the need to prevent First Amendment harms and administer those procedures accordingly." *City of Littleton v. Z.J. Gifts D–4, L.L.C.*, supra, 541 U.S. at 781–82, 124 S.Ct. at 2224. A division of this court has determined that a seventy-five-day judicial review provision contained within a municipality's adult business licensing ordinance provided the applicant with adequate judicial review and did not authorize improper delay. *Z.J. Gifts D–2, L.L.C. v. City of Aurora*, supra.

Here, Longmont's ordinance requires the municipal court to issue a decision within seventy-five days of the filing of the complaint. The seventy-five-day period for judicial review complies with the directives of both *FW/PBS, Inc. v. City of Dallas*, supra, and *City of Littleton v. Z.J. Gifts D–4, L.L.C.*, supra. Accordingly, we conclude the ordinance provides full and prompt judicial review of a license denial and avoids delay-induced First Amendment harm.

To the extent JAM argues the ordinance precludes a theoretical constitutional challenge, we observe that the ordinance does not by its terms prohibit an unsuccessful license applicant from presenting constitutional issues for judicial resolution.

Order affirmed.

Judge ROTHENBERG and Judge GRAHAM concur.